SCHOTT, Chief Judge.
Plaintiff, Mrs. Rosalie Richard, was injured when she fell down some steps at the St. Paul Episcopal Church in New Orleans. The trial court dismissed her suit against the church’s insurer. On appeal she contends that the steps were defective in that they were out of compliance with the city building code and various safety codes and that recovery was not barred by her own substandard conduct because the violations of the code and standards encompassed the foreseeable risk of such substandard conduct.
Plaintiff and her friend, Mrs. Márchese, were engaged in a youth recreational event at the church on September 1, 1979. They had prepared and served breakfast in the kitchen of the building. In the kitchen was a doorway leading to an outside staircase consisting of three steps to the ground. In the doorway was a wooden door which opened to the inside and a screen door which opened to the outside. Plaintiff picked up a small ice chest with the intention of standing in the doorway and emptying the contents of the ice chest to the side of the staircase. The wooden door was open. As she approached the doorway Mrs. Márchese held the screen door open and when plaintiff stepped through the doorway she fell forward and came to rest on the ground on the left side of the staircase looking from the door. Mrs. March: ese gave the following description:
“.... Rose picked up an ice chest to go to the back door to go dump it out and I opened the same door for her and then it was — she was just out the door, she just fell.”
Plaintiff gave the following explanation of what happened:
“She opened the screen door. She stopped by the hard door and held the screen door open with her right hand. I stepped past her and just intending to pour the ice into the thing and when I did with one fell swoop the next thing I remember was coming down on my hand, hitting my head and my body thumping over to the ground as if I had done a complete flip over the side.”
In answer to a question by the trial court she further explained that she did not intend to go down the steps at all:
“Yes, I had, in other words, when I looked at the floor and that step I was just going to put my foot out on that step, that top step right past the threshold and just dump it over the side of the brick wall, I had no intention to go down the steps, no, sir.”
Finally, on cross examination plaintiff testified:
“what I had done is I had intended to step on that first step which is the same level as the floor and just misstepped it and my foot went further down and I went completely head over heels off the step”.
The treads of the three steps in the staircase each measured ten inches wide. In the doorway of the kitchen was a metal threshold or sill and the distance between this threshold and the edge of the kitchen floor was six and one-half inches. This part of the floor was made of concrete like the steps below it and was the same color as the steps. Inside the sill was a decorative floor covering.
On each side of the steps was a short brick wall running perpendicular to the building from the bottom step to the top of the staircase. The height of these walls was a few inches above the level of the kitchen floor. But there were no handrails on the steps. Figure 1 illustrates the components and configuration of the staircase and the door. Figure 2 illustrates plaintiffs position just before she fell.
*660 FIGURE 1
[[Image here]]
*661 FIGURE 2
[[Image here]]
Plaintiff contends that the steps were defective in that the tread of what she calls the top step was shorter than the other three and because of the absence of handrails. Plaintiff attempted to prove that these defects constituted violations of the City Building Code and other codes of standards.
The building code provides that there be no variation in the width of treads in any flight of stairs. It also provides that all stairways have at least one set of handrails *662 thirty inches above the nosings of the treads. Experts were called by both sides on the issue of whether these requirements applied to this staircase. The question turned on whether this particular kitchen door was an exit required by the code for emergency or was it an extra door which was not required but which was simply a convenience to service the kitchen. The experts also differed as to whether the area between the door sill and the edge of the kitchen was a step at all such as to require its width to be the same as the step treads below.
The trial court gave the following reasons for judgment:
Whether or not these steps complied.with the N.O. Building Code or any other applicable standards is a question hopelessly confused by the testimony. Its resolution however is not essential to this case. Assuming (but not finding) the construction here was out of Code and even assuming that the steps thereby occasion an unreasonable risk of harm, plaintiff loses because she was contributorily negligent. Plaintiff was entirely credible, even remarkably candid. And the fact is she stepped forward through a doorway, with her vision at least partially obscured by the ice chest she carried, missed her step, and fell. Reasonable prudence required her to be more careful. Her action will be dismissed.
While the expert testimony is confusing a reading of the building code leads to the conclusion that the provisions relied upon by plaintiff do have application to the staircase in question. Some of the standards in the code are specifically applicable only to “required” exits but these two seem to apply to all staircases. However, we do not find a violation of the uniform tread provision and we find that the absence of the handrail had nothing to do with this accident.
As to the treads the code simply provides: “There shall be no variation in the width of treads in any flight_” Plaintiff’s experts, an architect and a safety engineer, said the threshold area was the tread of the top step in this flight of stairs. Defendant’s architect said this area was not a step at all, but an extension of the kitchen floor.
Webster’s Third New International Dictionary of 1971 defines a step as something to put the foot on in ascending or descending; a stairway as one or more flights of stairs and usually connecting landings providing passage from one level to another; and a stair as any one step of a series for ascending or descending to a different level. The American Heritage Dictionary of the English Language of 1973 defines a step as a rest for the foot in ascending or descending; a stairway or staircase as a flight of steps connecting separate levels, and a stair as one of a flight of steps. The area outside of the doorsill on the kitchen floor does not fit into these definitions. It is not part of the ascent or descent between levels and is not a part of the connection between levels. Like the ground at the lower level it is a part of the top level and these two levels are connected by steps. The building code's reference to treads has no application to the door sill area in question and its width does not constitute a violation of the code.
The purpose of the handrail requirement is to make a staircase safe for one who is ascending or descending. When plaintiff had her accident she was not using the staircase nor did she intend to do so. Instead of stepping to the edge of the floor from where she intended to dump the contents of the chest she stepped beyond it and fell. Plaintiff produced a physicist who testified that had there been a handrail on the left side of the staircase she would not have fallen off the staircase. But by this time the accident already began. She would have fallen forward instead of to the left. We can only speculate whether her injuries would have been greater or less. The point is that the absence of the handrails was not a cause in fact of her injuries.
For the reasons discussed we do not reach plaintiff’s principal argument for reversing the judgment of the trial court. However, for the benefit of a reviewing *663 court, even assuming that the door sill area is a step and constituted a violation of the building code, plaintiff is still not entitled to recover.
Plaintiff concedes that she was negligent but argues that she is entitled to recover pursuant to Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). There the court held that a motorist who inadvertently drove off a highway onto its shoulder and who loses control of her automobile upon striking a dangerous rut in the shoulder is not barred from recovery by her negligence in leaving the roadway. The court reasoned as follows:
Focusing on plaintiffs “substandard” conduct the question is whether the risk of injury from striking an unexpected, negligently maintained highway shoulder was a risk reasonably related to plaintiff’s failure to drive entirely on the paved portion of the highway. We conclude that it was not. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department’s duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on, or partially on the shoulder.
In effect plaintiff’s argument is twofold: Her conduct was merely “substandard” like Mrs. Rue’s when she drove on a shoulder which she had a right to assume was safe and defendant’s defective top step like the dangerous rut caused her injury. This argument is flawed because plaintiff’s conduct consisted of failing to see what she should have seen, failing to look where she was going, and stepping to the edge of the floor when her vision was blocked by the ice chest. Unlike, Mrs. Rue, she had no right to assume that there was a place to plant her foot because she could not see where she was going. Plaintiff’s argument is further flawed because the record does not support the conclusion that the tread violation caused the injury as did the dangerous rut in Rue. Nothing in the record supports the inference that had the sill area been five and one-half inches wider the accident would not have happened. She would still fall when she tried to go to the edge of the floor without looking where she was going.
AFFIRMED.